May it please the Court, Council of Record, Peter Martin for the School District. The District Court erred as a matter of law when it determined that the student in this case was eligible for special education even though the student never manifested any significant social, emotional, behavioral, or learning deficits in school. The District Court further erred in holding the IDEA's two-year statute of limitations did not apply to bar the child-fine claim and that the School District breached its child-fine obligations. The District Court committed additional errors by determining that the School District's evaluation was not appropriate, ordering the reimbursement of various private evaluation expenses, and by denying the School District's motion to supplement the administrative record. As to these matters, the District Court's decision must be reversed. I want to mainly talk about eligibility because that issue is the crux of this case. If the student is not eligible for special education, the remaining issues, including the cross-appeal, need not be considered. Whether the student is eligible for special education is a legal question which is reviewed de novo by this Court without deference to the administrative hearing decision. That is particularly true here, where the quality of the hearing officer's reasoning is suspect and infected with bias against the School District. The District Court twice noted the ALJ's tone in the findings and memorandum indicated he was upset with the School District. Also in a subsequent related case that we cited in our response and reply brief, the allegations of bias by the same hearing officer in a companion case involving the very same parties. I want to be clear that this case is not about whether the student is, in general terms, in need of medical and therapy services from third parties to address her difficult circumstances. This case is also not about whether the student is entitled to accommodations under Section 504 or the Americans with Disabilities Act. In fact, over time, the School District has provided and offered many accommodations. The narrow question before this Court is whether this student requires specialized instruction from a public school teacher in order to learn. Special education eligibility hinges on three considerations. First, does the student meet the criteria for a specific disability? Second, does the identified disability adversely affect educational performance? And third, does the adverse effect on educational performance from that qualifying disability result in a need for special education? At the federal level, the U.S. Department of Education has issued a regulation fleshing out that specific eligibility criteria. However, states are also free to impose their own special education standards provided that they are not inconsistent with the federal standards established by the IDEA. The State of Minnesota has crafted its own eligibility standards, which school districts are required to apply. Districts cannot pick and choose between the state rules and those in federal regulations. At issue here is whether the student meets the state eligibility criteria for emotional or behavioral disorder, EBD, and other health disability, or OHD. Counsel, if you'd been able to supplement the record at the district court level, how would that have changed the district court's analysis of eligibility? Your Honor, we believe that the supplementation would have aided the district court in deciding the need question and also because that information was contemporaneous with one of, contemporaneous, reflected contemporaneous face time with one of our public school teachers. Prior to that time, the last time that the student had exposure to any one of our teachers was for a limited time period in September of 2017 when the student was in the PAWS program with a teacher named Bob Logan on three different days. So, we feel like that supplementation would have aided the district court clearly on the question of need and also the declaration of Deanna Lawrence indicated the student's productivity in our program that we provided to her exceeded that of the private program provided by Heather Lindstrom. And so, we felt that that supplementation would have most assuredly aided the district court on both that particular remedy of reimbursement and also the need for special education. The statute seems to provide on its face for supplementation, but counsel, the student would argue that the Eighth Circuit's case law would preclude that. How would you respond to that? I don't think there is a law blocking supplementation in every case, Your Honor. I do not read Eighth Circuit precedent in that way. I think you have to present a solid justification. I think that's what the Circuit case law says. That is to say that if there are good grounds, compelling grounds, and the information is relevant and non-cumulative, that the court could properly consider it. And in this case, manifestly, it is non-cumulative and most absolutely relevant. So, I don't see a clear impediment to supplementation here at all, Your Honor. I think you kind of look at each individual case, and in this case is admittedly an unusual case where supplementation would have helped. Regarding the EBD criteria, you look at the Minnesota rule, which is 3525.1329. There are a number of components enumerated, but to decide this case, you only need to see of the rule, which I will refer to as the three environments test. That part of the rule says that the impairment must be consistently exhibited by occurrences in at least three different settings. One is home or community, and two must be educational settings. One must be the classroom. There is no evidence in the record showing occurrences of a significant impairment in the classroom or any other educational setting. This conclusion is fully supported by the school district's exhaustive evaluation, but also from the testimony of the parent who said several times during the hearing that once the student got to school, she was fine. Doesn't Minnesota law also allow an evaluation to be conducted that deviates from the standard conditions? So, Your Honor, you're referring to the team override rule, I believe? I'm looking at 352.2710 and a subpart under that. I think that's the override rule. Right. I think 2710 is our rule regarding our evaluation procedures, but there is a team override rule that is a matter in this case. The hearing officer in this case said that it was error for us not to consider the team override, and that's unusual, and he invalidated our evaluation based in part upon our not applying that criteria. We actually did consider the criteria, and that consideration is reflected in the evaluation report, but as we said in our brief, the team override criteria, the premise is that you don't meet the state eligibility criteria as a result of invalid findings, that the evaluation produced invalid findings. Our evaluation team, which, by the way, is comprised of very experienced evaluators, collectively over 100 years of evaluation experience, concluded that there were no invalid findings here, so the criteria did not apply. Also, the override criteria says that you must need special education, and the team concluded based upon the collective evidence that she did not need special education, so we concluded that the override rule wouldn't apply in this case. And I will also say, as we pointed out in our brief, that override rule is permissive. It says you make, determine, and so its use is not mandatory in any case. So there is a separate path to eligibility, but our contention is it did not apply under the unique facts here. Counsel, with regard to your 2AC analysis, why wouldn't the students' complete absence from the classroom have to be taken into consideration under that analysis? Your Honor, as I said, it's a consideration of three different environments, and one of them is the home. And the school district recognized the challenges, the very real challenges going on inside the student's home, but that's where the epicenter of these absences is occurring. So we factor that in. You check that box. That environment is there. But you can't double count it and say that it also extends to the educational setting. There has to be something additional. What the hearing officer did is he did something that is not supported anywhere. In any regulation, there's no case. There's no federal or state case. There's no interpretation from the Minnesota Department of Education who crafted this rule that you can essentially double count what is going on at home and say it occurs in the school environment. But is it a fair characterization to say it was going on at home? I mean, there was evidence in the record that on one occasion at least she got to school but couldn't walk into school. And the allegation is that there may have been issues at home, but the fundamental problem here was that she couldn't access and participate in the classroom activities. And I guess I struggle with the two distinct characterizations, problems at home versus problems at school. It doesn't seem to me that these were problems at home. They were at least problems that bled over into school. No, Your Honor. In fact, it's actually the opposite. In fact, the circumstance that you're describing was a situation that occurred in March, March 17 of 2016, I believe, where the student was in the parking lot and did not want to get out of her father's car to come to school. In that particular case, the school counselor came out to her car, talked to her for about, I think she said, six or seven minutes. They walked into school together, and as the record shows, she went to class and attended the whole day and had a great day at school. So the allegation there was it was a problem in the car, I guess? Well, she was reluctant to go into school at that time, but this counselor talked to her at that time, and then she went to school and had a good day. And I will say, and there was one other situation where. . . So your position is that anything that happens before you cross the threshold into the school is all part of the home thing, and that just goes to the first consideration. The other two considerations only start becoming relevant the minute you cross the threshold. Well, it does say the rule. . . I'm reading the plain language of the rule, Your Honor. It says educational setting and one must be a classroom, so that means you're in a school building. So I'm applying the clear intent of the rule, the clear language. Were there any situations where she had to leave school or left school? There are none, not a single time. In fact, it's interesting because we also looked at her health records over time. In her entire school career, she only visited the nurse's office like three times in her whole school career. She was offered check-ins. Basically, she had a pass to leave whenever she wanted to during the school day. She never utilized it and told the counselor and the social worker that she didn't need it. So in the educational setting, she was a model student, and she is still exceptionally talented in that environment. So our conclusion is that the three environments test wasn't met. Therefore, the student does not have a qualifying disability. She's not eligible. Take the OHD criteria, which is the next one, other health disability. There is a Part A and a Part B to that criteria. Part A says there has to be evidence of a chronic or acute health condition. And Part B is a list of eight factors, and you have to meet three of those eight. Well, we said that there was excessive absenteeism linked to a health condition, but we didn't find any other of the boxes were checked for this particular student. The hearing officer said she met three other criteria for a total of four of the eight, but he attributed or ascribed absences to each and every one of those criteria. For example, he said she could not complete the educational task of going to school, which is interesting. But he basically quadruple-counted the absences. We cited in our brief the statement of needs and reasonableness for that particular administrative rule, and the rule says that each of those eight criteria are meant to reflect different skills. So you can't double-count, triple-count excessive absenteeism. You only count it once. Just like in the EBD criteria, you factor the home or the community, but then there has to be those two educational environments. And in this case, when this student was in school, as noted by her teachers, and by the way, this is across all settings. Her teachers in school who dealt with her said that she was a model student, very brilliant, capable, had friends, worked well in groups. She had no difficulties. Carrie Hermanson, who is the declarant in our motion to supplement, said the same thing. The private provider, Heather Lindstrom, said the same thing. When she's in a learning environment, she does extremely well. She's very talented, and she doesn't need special education. And I see that I'm in my rebuttal time, and I would like to save it. Thank you. Ms. Goetz?  May it please the Court. Amy Goetz on behalf of the appellee and cross-appellant, the student and her parents, and with me also is Andrea Jepson on the brief. A public school cannot refuse to provide special education when the undisputed evidence demonstrates a legitimate disability that prevents school attendance and results in school failure. The IDEA defines special education as providing instruction outside the classroom, in the home, in hospitals, in other institutions, even in jails. This student's inability to attend school resulted from an emotional disability that prevented her from receiving an education for three years. There's no dispute that a genuine emotional disability is the reason she does not attend school. This was the consensus of all who testified. It included her treating psychiatrist, the pediatric neuropsychologist, the behavioral psychologist, the licensed special educator who performed an independent evaluation, her parents, and even the district's own psychiatric expert agreed. None of the district's 15 witnesses disputed this. Pediatric psychiatrist Dr. Reed Sulek testified directly that the student's profound anxiety renders her unable to attend school, emphasizing she's not merely choosing to stay at home. That's at Appendix 1299 to 1300. The ALJ found this testimony credible and based the eligibility determination on it and the undisputed evidence of school failure the district court properly affirmed. When not in school or provided instruction at home, the student failed all her classes but two over three years. This is the essence of an adverse effect on educational performance. In Letter to Anonymous, cited in the district's brief, the Office of Special Ed. Programs of the United States Department of Education recognized that it's self-evident that the inability to be present in a classroom adversely affects one's educational performance. And this child, her educational performance was affected in every class, every day, in every location at school when she was not in attendance because she failed to learn, she failed to earn credits, she failed to pass her classes or advance toward graduation. There's simply no evidence that she can succeed academically without addressing her behavioral and emotional problems. It's the very reason she's eligible for and needs special education. The district which has the burden of proof here has provided no evidence to the contrary. As this court recognized in ISD versus AC, the IDEA included emotional disturbance as a category of disability that entitles children to special education when social and emotional problems are not separable from the learning process as here. The IDEA was enacted to serve children just like this with disabilities that prevented them from coming to school and to provide access to the general curriculum no matter where instruction must be provided. The district would take us back 50 years to a time when students with disabilities, both physical and psychological, were left out of education. The IDEA is concerned with both academic and functional skills because both are necessary for educational success. Functional skills are defined as skills to increase performance and independence at work, in school, in the home, in the community, for leisure time, and for post-secondary and other lifelong learning opportunities. And that definition comes from Minnesota Rule 3525.021, Subdivision 24. The administrative law judge in a thorough and well-reasoned decision made the correct legal conclusions based on the evidence and credibility determinations to which deferences do. The district court properly affirmed the legal conclusions on eligibility, on child find, and the denial of a free appropriate public education, or FAPE. Counsel, I'd like to ask you a question about the child find obligations that you just mentioned. And specifically with regard to the limitations period. Is it your position that the two-year limitations period can never start running until the parents are officially notified of their legal rights? It is. When the district has an obligation to inform the parents of their legal rights, to inform the parents of a refusal or a proposal to do or not do something, that triggers the obligation of the school district to provide written notice, including procedural safeguards notice, so that parents are fully informed and can exercise their rights in these important matters. Do you have any case law support for that position? Yes, I believe we cited that in our brief. There are a number of cases, and I don't have them at the ready. I can turn to our brief if you like. There are a number of federal court cases and an appellate court case. I think the Fifth Circuit has decided directly on point this issue. When a school district does not give parents the procedural safeguards notice in a timely manner, then the statute of limitations doesn't apply. The statute itself, frankly, says that. When parents are prevented from requesting a hearing because the district does not provide to them the information it is required to provide because procedural due process is embedded in the statute. Isn't there a difference in the causal nexus of failing to do that and not being provided the official notice? There is, and the hearing officer rightly found that there was a causal nexus, that the parents were prevented from requesting a hearing because they did not know that they had a claim. They didn't know they had a claim because they were not provided written notice of their rights so that they could be apprised of those rights and exercise them. The IDEAS hearing system is established to exhaust administrative remedies, encourage early resolution of disputes, and discourage multiple appeals that lack merit. The district refused to evaluate this student over almost three years while it knew she was failing classes, she was in and out of psychiatric hospital and treatment programs, and she had stopped attending school. The district never offered to evaluate the student, but staff provided inaccurate and misleading verbal information about special education to her parents. What about the Minnesota requirement that the EBD, at least one of the observations, needs to be in a classroom and your client never came to the classroom in order to satisfy that regulation? The Minnesota regulation says that an observation must occur in the classroom or other learning environment. A clause that the district repeatedly leaves out of its recitation of applicable law. There were many opportunities for the district to observe this student. Her parents repeatedly requested and provided letters from her psychiatrist that she be given homebound instruction, she could have been observed there. This student went to school on, the student was in the hospital at the beginning of this case when her parent requested evaluation. Her parents specifically asked the district to coordinate their evaluation with the hospital where she was. She could have been observed there. She went to the district's schools during the district's evaluation to conduct some of the evaluation activities. She could have been observed there. She went to the district's school during its evaluation at the beginning of her 11th grade for three partial days. She could have been observed there. Many educational environments she could have been observed in. I want to go back to Judge Gross' questions about the limitations period. The Act itself says that the period begins to run on the date that the parents knew or should have known. There are cases like, let me see, Richard R. I think is one. Yeah, and DK versus Abington where they talk about the framework is the school district withholds information such that the parent can't make an informed decision. Is it your position here that until the information was provided in the form of the notice by the school district that your clients were unable to make a determination and that that essentially is the withholding of information? So there are two parts to the exception to the availability of the statute of limitations. One is the act of withholding of information. The other is incomplete or inadequate notice or negligence, right? Right. The other is failure to provide when the district ought to provide. And, yes, our position is parents don't know, nor should they be assumed to know or required to have knowledge that they have a claim against a public school, that the public school has denied their child rights when they are never provided notice of their rights, when they have no information on which to base that knowledge that the statute of limitations, that's why there are those exceptions because the statute of limitations shouldn't begin to run. It's a discovery statute of limitations. And parents shouldn't be held to a standard of discovery of claims when they're not given the information on which to form that knowledge. Thank you. The parents never refused any special education evaluation but consented to every evaluation the district proposed without condition. They gave consent and asked for more information about the functional behavior assessment proposed, but the notice at appendix 3250 to 53, the notice of evaluation, specifically provides consent to proceed with the evaluation as proposed. It does not contain a condition. It does not withhold consent as the district asserts. Once it did evaluate the student, the district refused to evaluate the function of the very behavior causing the failure and refused to evaluate or provide instruction to her in the hospital or at home. This is why its evaluation missed the boat. The district has affirmative and unassignable obligations to identify children suspected of having a disability and a need for special education and cannot force responsibility onto parents in order to trigger its duties. Nor can the district avoid its child find obligations because the student's disability prevented her from regular attendance at school when her parents requested home instruction, evaluation in the hospital. She went to the district schools during its evaluation and at the start of her 11th grade year. The district's delays made the student's condition worse and increased her need for special education and related services over time. As to the student and parents appeal, the district court committed error when it reversed the award of private compensatory education services for three reasons. First, the district court agreed that this student was denied a FAPE, free appropriate public education, and the denial of a FAPE must be cured. The IDEA remedy language is mandatory. The court shall order relief. And the Supreme Court recognized in Frye v. Napoleon that if a school district fails to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. The district court failed to explain how denying any relief for three years of deprivation was appropriate. Its decision was inexplicable and unsupportable. Second, compensatory education is an equitable remedy designed to replace lost services, and the student has not yet received one minute of replacement services. Third, the school district cannot cure the educational harm it produced by providing current services. The district has both a current and past obligation to this student because she's currently eligible and because she was eligible for three years when it provided to her no special education or related services. Even if the district fulfilled its current obligation, the district's past failures would not be cured. This court recognized in CB v. Special School District No. 1 that school districts that already failed a student don't get more opportunities to serve or fail them before private compensatory services are awarded as relief. The district court effectively immunized the district's refusal to fulfill its child-fined obligations when it removed the private services awarded as compensatory education and irrational rule, according to the Supreme Court in Forrest Grove v. TA. For almost three years while the district ignored its child-fined obligations, the student earned only two semester credits. In less than 16 hours with the private special educator hired by the parents, the student earned almost the same amount of credits. The private special educator provided specialized instruction that was effective almost immediately to support the student in getting out of her bedroom, out of her home, and starting to learn. Every witness to testify on the subject agreed that with timely and appropriate special education, this student could catch up and graduate with her peers. Had the private special education ordered by the administrative law judge continued, she would likely have graduated and today been in college rather than remaining three years behind waiting for effective private services to be restored. Excuse me. Private special education was specialized instruction and it came to the student in four parts. The private special educator's testimonies at the appendix 1482 to 1489, there she described the specialized instruction she provided that was the first instruction this student had received in more than three years to start to restore her to her education. First she developed a safe and trusting relationship. Then she helped the student get emotionally regulated in order to learn. Then she provided the supports to cope with and work through the emotional barriers to engaging in learning, to initiating, maintaining, and completing tasks. And four, by assuring alignment with the therapeutic approaches provided by her treatment providers. This is far more than just the babysitting that the district describes what the student needs. The tutor's testimony is complete and descriptive and explains exactly how she was able to produce such fabulous results in really such short order and in the face of a long period of failure. The private special educator described this student as very excited to learn. Private instruction was provided in comfortable community settings with a goal toward expanding the services and locations with supports to increase her stamina and tolerance and to build on her success. This private program should be reinstated to make up for the three years of education this student is still missing. I just have one question that goes back to the eligibility argument that the school district is making. And that is that they make much of the fact that absenteeism was quadruple counted and that really there's only one of the eight criteria that was met, not three. I'm sure that you have a different opinion on that and I'm just curious what your position exactly is. Yes, we have a very different opinion on it. The reason why we have multiple criteria is to make sure that we're covering the waterfront in terms of getting that adverse effect on education prong. So we look at a variety of variables. One is, is the student not in attendance? The other is, is the student initiating, maintaining, and completing tasks? Well, she can't do that when she's not in school. You know, this district seems to be arguing that this student doesn't need education at all. And that simply is not the case or she would have graduated by now. So the reason we have multiple criteria to meet is to make sure that there's not just a single problem that doesn't expand across environments, but this student was affected in every environment. Every day she wasn't there, she didn't learn, she didn't complete assignments, she didn't learn, she failed her classes all but two in three years. Thank you. Any questions? Thank you very much. Thank you.  Thank you, Your Honor. There is no shortcut to eligibility recognized in state or federal law based on excessive absenteeism alone. And that is what we have here. We have a student who is excessively absent as a result of medical conditions that are beyond the school district's control to ameliorate. Those are matters for medical professionals. We're educators. There is no rule, there's no interpretation of a rule that says you're eligible for special education based solely upon excessive absenteeism. If that in fact were the case, I mean this is a big policy issue related to this issue. Can a student qualify for special education who doesn't manifest any particular difficulties of any kind in a school environment? You will greatly expand the scope of school district's child find obligations and the potential universe of special education students because there's a lot of kids who are absent from school. We cited an article in our brief that it was a MinnPost article that says that in 2016, one in six students in Minnesota was excessively absent or chronically absent from school. This issue... It doesn't matter that this is not mere truancy, but this is a medical condition that essentially locks the child in the home because she can't get her way out. The school district in this case has not taken the position that she is true, Your Honor. In fact, if you look at the record, a lot of negative connotations are being ascribed to the actions of the school district, but if you read the email communications over several years, the parent mother is really complimentary of the efforts of the school. And one of the things the school district did frequently was at parent request excuse the students' absences. And I get that, but the statistics you're citing, most of those people are mere truants, right? Or am I wrong? I don't remember the whole data of the article, Your Honor, but the point is that a truant, someone could come along and say, you're excessively absent, therefore it triggers your child find obligation and the student should be eligible. That is of great concern. I mean, I think that is the big issue in this case, is can a student who doesn't manifest any challenges in school, can they still be eligible based upon things that go on at home? That is a very significant issue. I will say, too, on the issue of talking about the eligibility criteria, you must also show a need for special education. And the circuits, there are three circuits that have identified various criteria related to the need for special education. And they've set out several factors, which are, does the student meet academic standards? In this case, the student is credit deficient, but the reason why the student is credit deficient is because she's not doing schoolwork and she's not attending school. There is no doubt, and the hearing officer said this, by the way, there is no doubt that if she was in school, she'd be excelling without any special assistance. The only reason why she's credit deficient is she's at home with an illness and she's not able to do schoolwork because she's ill, just like any one of us would be ill. The reality is that you can have an illness or a disability or a mental health diagnosis and not need special education, and that is this student. Second, and by the way, I'm citing the Alvin School District, Durbrow versus Cobb County Schools and Board of Education of Fayette County. They all say the second criteria, the teachers do not recommend special education for the student. All the teachers in this case who have worked with this student said that she does not need special education. The student does not exhibit unusual or alarming conduct warranting special education. Her teachers all testified that she was socially appropriate at school and in other learning environments too. She worked well in groups, had friends. She was not a challenge from a behavior standpoint. And then the fourth one, does the student demonstrate the capacity to comprehend course material? Manifestly, yes. She has a greater ability than even non-disabled students based upon the data that we got in our evaluation. And I just wanted to close, Your Honor, by saying that this is a complicated case requiring a careful and exacting review. While the student struggles with mental and physical illnesses are certainly important matters for medical professionals, the need she presents is for assistance in leaving her bedroom. Whatever forms assistance might take, it would not involve instruction from a public school teacher. The student is not eligible for special education because she does not need it in order to learn. For these reasons and those in abreast, the district court's decision should be reversed. Thank you. I want to thank you all very much for your briefs and argument. They've been very helpful. We'll take the matter under advisement and get back to you as soon as possible.